Good morning and welcome. The first case on the call of the docket today, Wednesday, January 23, 2013, is Agenda No. 9, Case No. 113482, People ex rel. The first case on the call of the City of Chicago v. Le Mirage. Counsel for the appellant, please proceed. Good morning, Your Honors. Counsel, my name is Carrie Maloney-Layton and I represent the City of Chicago. May it please the Court. Your Honors, a jury of respondents' peers found them guilty beyond a reasonable doubt of indirect criminal contempt for willfully violating building court orders not to occupy the second floor of the building at 2347 South Michigan Avenue. The appellate court's review of that verdict assessed whether the court believed the evidence showed guilt beyond a reasonable doubt and not merely whether a rational jury could so find. That usurped the jury's role of fact finder in disregard of uniform Illinois precedent, which applies deferential review to all factual determinations, including in contempt cases. This morning, we urge the Court to hold that the correct standard of review requires deference to the jury's verdict and to reject respondents' call for de novo review. I will explain now that whether respondents committed contempt was a factual issue for the jury and that under the correct deferential standard, this Court should affirm the jury's verdict. Doesn't the material differences between criminal and civil contempt proceedings suggest the standard review must necessarily be different? No, Your Honor. There are differences in that the burden of proof for the proceeding itself requires a different degree of proof to be satisfied. With the criminal contempt matter, the burden of proof at the trial is whether the proof is sufficient beyond a reasonable doubt. In a civil matter, it's simply the preponderance of the evidence standard. However, on review, the standard still must show deference to whatever the fact finder determined and simply assess whether the fact finder, there was sufficient evidence from which the fact finder could conclude that the burden of proof, whichever burden of proof applies, was satisfied. So, although there is a difference between civil and criminal contempt in that respect, that is not relevant for purposes of appellate review for determining whether the fact finders, whether the evidence showed that the fact finder could reach that particular conclusion. Counsel, do I understand your argument correctly that your position is if there was an ambiguity to the order that that was for the jury to resolve? Well, Your Honor, our position is that any particular ambiguity in the order was relevant to the extent that the order was unclear to the respondents themselves. The order's clarity as a stand-alone issue is not relevant. In a contempt proceeding, this Court has established the elements are whether there was a willful violation of a valid order. In order to make that determination, it is necessary for the fact finder to decide whether the respondents who were subject to the court order understood it. So, therefore, if there's something that's unclear about the particular order, that goes to respondents' state of mind. If they believed it was unclear... But isn't there an element of the contempt charge that says that the order has to be clear in and of itself? No, there is no element of contempt, the charge itself. The jury was instructed to decide whether the order set forth in reasonable, with reasonable detail what acts were prohibited, but that was in order to determine whether the particular respondent subject to the court order understood it. Not as a matter, not as a stand-alone matter. Whether the court thought the order was clear was not the important question. The important question is whether the respondents who were subject to the order understood it, such that when they took particular actions, those actions could be deemed to have willfully violated the court's order. Ms. Dayton, with regard to the respondent's state of mind, didn't the City of Chicago issue a license for the business to be opened, and does that enter into their state of mind to think, well, the City allows us to be open, and yet we have these other court orders that might be ambiguous? No, Your Honor, it doesn't, because the City's, whether the City issues a license for the business to operate is separate from whether the building in which the business is housed is operable. But is the business that is operating within a structure given a license no matter what the structure is like, and you can have a business in an unsafe license in an unsafe structure? Well, at the time, Your Honor, there was no requirement to obtain a business license, a liquor license, that the building pass any particular inspection at that time. The building of, the business, of course, could not operate in a business that was subject, I mean, sorry, in a building that was subject to a court order not to open because of dangerous conditions on the premises, but that didn't mean that the business itself could not be licensed to, could not have satisfied everything necessary to license it for purposes of serving liquor. It was simply, those were separate matters at the time, and they are still separate matters. They're different departments, too. On the one hand, the Liquor Commission determines whether the business can receive a liquor license, and on the other, it's the Building Department that assesses whether the structure in which the business is housed is sufficiently safe. So the two departments don't notify each other when there's an issue? They do not communicate. At that time, there was not communication between them. At this time, the communication, there's been an effort to improve communication, but it's two separate departments that are determining different things. Is it your position that this is a strict application of Jackson v. Virginia? In other words, the reason whether any rational trier of fact could have found for the city under these circumstances and therefore that it's not the, would not be within the appellate court's purview to consider whether or not the court order involved was ambiguous or unclear? Correct, Your Honor. The question for the appellate court should have been whether there was a version of the evidence from which a rational jury, not the appellate court, not every jury, but a rational jury could conclude that respondents violated the court orders in a willful manner. Again, those were the two elements, willful violation and a valid court order, and the appellate court did not have the, should not have assessed for itself the evidence. It should not have weighed it. This court's precedent is clear that if it's a factual determination, that particular determination is reviewed with deference to the fact-finding performed below, and that's for good reason. This court has explained in numerous cases that factual determinations are better suited for decision at the trial level because the fact-finders are the ones to hear the evidence, to observe the witnesses, and can therefore best assess the credibility and weigh the particular evidence, whereas the appellate court is reading a cold record and doesn't have that same ability. In contrast, legal issues receive different treatment. The court isn't, the appellate court is in a better position to assess those issues because there are principles at stake that should be consistent from case to case. Did not the appellate court in this case set forth the correct standard of review and I'm reading from the opinion now. It says, the reviewing court views the evidence in light most favorable to the prosecution to determine whether any rational prior effect could have found the elements were proved beyond a reasonable doubt. That's basically the same thing this court said in Smith in 1999, but then the court went on and again almost quoting Smith said, however, where a court reviews of the opinion that the evidence is insufficient to establish defendant's guilt beyond a reasonable doubt, it must reverse the conviction. So what standard did the appellate court apply here and what does Smith mean with regard to applying what is set forth I think is the correct standard of review. Yes, Your Honor. We submit that the appellate court, although it did state certain statements from Smith correctly, misrepresented or misapplied the standard itself because those statements from Smith do explain the Jackson standard that the correct test is whether a particular jury, a rational jury could have concluded that the evidence supported conviction, but that, as Smith says, that determination is made with deference to the fact finding below because the appellate court is not in a position to assess the evidence in the same way as the fact finder did. The appellate court in this case did state those statements that Your Honor read, but it did not actually perform that function. Instead, what the court did was treat that last sentence, which is if we conclude that the evidence is insufficient to convict beyond a reasonable doubt, we should reverse, as license to weigh the evidence itself instead of simply as after analyzing under the correct standard, which gives deference to the fact that no rational jury could find the evidence sufficient. In that case, then yes, the appellate court should reverse the verdict, but in this case, the appellate court misread or misapplied that particular sentence and treated it as license for the court to weigh the evidence itself instead of looking only to see whether a rational jury could have reached that verdict. Could you help me with the physical layout? What's on the first floor? Your Honor, yes. There is a restaurant on the first floor of the building. Do they have the liquor license? Your Honor, I'm not entirely sure whether there was a liquor license for the restaurant. And on the second floor was a club. Correct. And the area that's in question is ceiling suspended, I guess little party rooms. Sure. On the second floor of the building, there is a dance floor and a stage and bars. And along three sides of the second floor, supported by the building's roof trusses, it was a bow truss roof, and built onto those particular structural trusses were boxes, sky boxes. And they extended out about 15 feet, and they were along three different sides. So they were overlooking below the dance floor, and patrons could go up and see what was happening below. There were some additional bar areas up there. And on the night in question, were these third-level facilities used at all? Yes, there was testimony, Your Honor, from numerous witnesses that they were in use on the evening in question. So the transcript, I thought, indicated that the parties agreed only to close the mezzanine, and that's at third level. No, Your Honor. The parties did not agree to close only the mezzanine. There was testimony at trial that before the first hearing, there were four court hearings, before the very first hearing, the two attorneys met and said they did agree that they would close the VIP boxes. But then at the hearing, that July 19th hearing, they didn't have sufficient time to finish conferring, according to the city's witnesses. So the city put on the building inspector who testified that the entire second floor would be dangerous and hazardous because those boxes that were around the edges of the nightclub were not supposed to be built on structural members and she wasn't clear whether they could support the weight, you know, those particular boxes could support weight. And there was a risk, if they were to collapse, that they could, you know, fall upon the second floor. So the second floor would be in danger only because of the configuration of the third level? The second floor would be in danger from the possibility that those boxes could collapse onto the second floor because they were built on structural members that shouldn't have supported weight. And so from that, at that hearing, then the judge said, would an order today not to occupy that second floor satisfy your concerns to the building inspector? And she said yes. So the court entered a mandatory order not to occupy second floor. And then on three subsequent occasions, that same order was continued. On August 9th, the language of the order read, mandatory order not to occupy second floor of subject premises. On both of these orders, it was captioned with the building's address in the subject line. So plainly the orders referred to the building. The second floor, the premises that was referred to was building. So that second floor was ordered closed. If the litigants truly had believed that only the mezzanine had been ordered closed, they had an obligation to go before the court to say that's not what we thought was going to be closed. We thought it was just going to be the mezzanine. But this order says second floor. So let's go back to if we find that there was an ambiguity. I know we're backtracking to one of the earlier questions, but I think it's important. I think your position, which I think you're stating in a little different way, again, that if there is an ambiguity, the jury is to look at what the respondents understood the order to be, right? Didn't you say that earlier? Your Honor, what I tried to say, and I'm not sure if I did, what I tried to say is that any ambiguity in the order is relevant only to the extent that respondents themselves found it to be unclear. Because there is precedent from the appellate court that if a particular party understands a court's mandate and violates that mandate, that whatever language the court used to say. That's what I want to get at. That's what I understood you to say. Was the jury ever instructed on that? As I look at the instruction that actually went in, the second element is that the order described in reasonable detail the acts prohibited. Correct. Where do we glean from that that it's the defendant's understanding of the order? Well, there is also whether a respondent's violation was willful. And in order to determine whether their violation was willful, that necessarily required an assessment of whether respondents understood what they were prohibited from doing. So there's two pieces to it. Whether the order described in a clear enough language what should have been prohibited, what was prohibited, and whether respondents' conduct was willful, meaning that they knew what was prohibited, and yet their actions violated the court's order anyway. So those two pieces together instructed the jury to decide the factual question about. Would it be difficult if a jury found that an order was ambiguous, unclear, to find a willful violation of an order that's unclear? I'm sorry, Your Honor. Well, you're saying there's the will, you know, that they would have to find that the violation was willful. Is it difficult to find a willful violation for something that isn't clear? If the order is not clear to the respondents, then yes, it would be difficult to find. And that's my question. Where is the jury ever instructed on that? The jury was instructed to find whether there was a willful violation of an order that described in reasonable detail what was prohibited. And the evidence showed that respondents understood not only that the second floor of the building itself, well, they even admit that they understood that the mezzanine level of the building was to be closed, and that particular mezzanine was in operation according to the evidence presented at the trial. So they understood what the court had commanded, which was at the very least do not occupy the mezzanine, yet they acted to willfully violate that order by operating the mezzanine, and that is a version of the evidence that a rational jury could use to convict them. Are you suggesting that there's a higher burden of proof in the city in establishing whether the respondent knew what the order meant, as opposed to a jury determining what a reasonable person would do in interpreting that order? No, Your Honor. The jury wasn't asked to decide what a reasonable person would do. It was simply asked to decide what these respondents, whether they understood what was ordered of them and whether they nevertheless disobeyed the court's command. And is that an issue for the jury to determine as opposed to a matter of law for a court or a judge to determine? Yes, Your Honor. That is an issue of law, a fact, for the jury to determine. Respondents even requested that a jury decide their case. The jury of respondents' peers are the ones who decide the facts about a particular order. Again, this Court's precedent is clear. If it's a factual matter, the jury or the fact finder should decide, and that is because there is no relevance to second floor of subject premises for any future case. It's simply a question whether these respondents in this particular building that was subject to these particular orders understood what was asked of them by the court and yet nevertheless did not comply with what the court had ordered. So it was a question of fact. It wasn't relevant for any future case. It's not a question of law, and respondents have never identified what potential issue of law exists from words not to occupy second floor that could concern a court that would warrant de novo review. But even if de novo review is appropriate for a piece of this contempt determination, which we submit it doesn't even make sense because it's the judge's own order that the judge would have to decide was clear as a separate element, even if it were open to de novo review because of a legal issue, we submit that the orders in this case were very clear and that the evidence showed respondents understood them, including understanding that the mezzanine was not to be occupied and that was sufficient to convict respondents. I see my time has expired, and I will sit down. Thank you. Thank you. Counsel for the appellee. Good morning. May it please the court, my name is Christopher Carmichael. I represent the respondent appellee, Dwayne Kiles, along with Victor Henderson, Darren Goodson, and Chelsea Ashbrook. The question, one of the two questions before the court today, is whether the appellate court applied the correct standard of review. And we submit that the appellate court did not create a new standard of review and that the appellate court applied the rational trier of fact, beyond a reasonable doubt standard, that this court had enunciated in People v. Smith and that it had both used in O'Leary. There was a discussion in the appellate court's opinion about some lack of clarity in other appellate opinions applying civil standards in a criminal contempt context. But the appellate court came back and made clear that it was applying the rational trier of fact standard, which is exactly what this court did in O'Leary. The issue that the city has with that is the application of that standard in this case and the result, not with the actual standard that the appellate court applied. And the second question then the court has to confront is, did the appellate court correctly apply this standard? Due process requires clarity in orders prohibiting conduct. You can't have a contempt proceeding if an order is unclear or ambiguous. As this court ruled in O'Leary, an order cannot support contempt unless it sets forth with certainty, clarity and conciseness what actions are enjoined. The mandate of the court must be clear before disobedience can subject a person to contempt. Was it a jury question whether the court's order was clear and unambiguous? The question should not have reached the jury in our view. If the order is ambiguous, there should be no contempt prosecution. It should stop. And was that raised below in the trial court? The appellate court found, and I believe the trial court, both the appellate court found that the trial court believed the order was unambiguous and the trial court then excluded certain evidence including Judge Lynch, the half sheet and other issues based on its belief the order was clear. So whether by implication or otherwise, I believe that the trial court at least indicated it had a belief that the order was unclear. The jury was instructed, however, on this issue, was it not? The jury was instructed that the order described in reasonable detail the acts prohibited. That fact question was presented to the jury. Was there an objection to that jury instruction or was there any objection to that jury instruction raised in the appellate court? I don't believe to that instruction and that you're correct, the jury was instructed to assess whether the order described the acts prohibited. So your request of this court that we determine that in a contempt proceeding, the issue of the clarity of the order be determined by the judge and that it be reviewed de novo is an argument that has not been made in the trial court or the appellate court by you and if that's true, why is it not forfeited? And the argument that the order was ambiguous was always made. Exactly who made that argument, I'm not sure if it's clear, who should have decided that issue as opposed to the judge or jury. And I believe that the court should review the issue anyway even if it were forfeited because the court does have the discretion to take a look at that issue and can affirm on any basis in the record. But we don't believe you need to actually reach that issue and decide if it should be a de novo review or not because this court can affirm based on what the appellate court said and affirm the appellate court because there is insufficient evidence to find beyond a reasonable doubt that the order was unambiguous and we would submit that you can affirm on that basis. In the context of this building, the order was ambiguous. The order was unclear as to what second floor meant. As the appellate court found, during the hearing, the second floor is described as the mezzanine and VIP. That's how the second floor is described during the hearing. The second floor is the second floor of the nightclub in that description during the hearing. The city says, and during its argument, it added the words, as the appellate court noted, of the building. That is not in the order itself, and the order is unclear which is meant, whether it's the building or that second floor mezzanine VIP area. It seems that the order may be considered clear when it refers to a location on South Michigan  And it seems further that in the arguments being made that the ambiguity may have arisen out of the negotiations beforehand, the discussion, the evidence that was presented as to the mezzanine or the VIP rooms. Is that a fair characterization? I would say the ambiguity arose after the events in February where there was an incident at the premises. I would submit that the ambiguity did not arise until after that point in which the city took the position that it was meant as an order to not occupy the entire building. Prior to that, I think the evidence shows that the parties believed the order meant the VIP areas and the mezzanine level. So the evidence that goes to the jury or to the fact finder, does that include more than just the order in a prosecution for indirect criminal contempt by violating a court order? Does the evidence that went into the hearing come in, or is it just the order? It should be, in this particular case, it should be all the evidence about the hearing, the judge's half sheet, all of that evidence should go into the jury. Now, you talked about the standard of review, and I did with Ms. Layton. The appellate court clearly says, well, this, whether the order describes what's prohibited in reasonable detail is an issue of fact requiring deferential review. Then it goes on and says where we are not convinced that this element has been proven beyond a reasonable doubt, we are obligated to reverse. Does that sound like giving deference to what the trial court found? I believe it sounds exactly like both Smith and O'Leary. It does. And while review is deferential, it still has to be review. You can't, it's not a rubber stamp. The evidence does have to be reviewed, and the appellate court does have to conduct some sort of review to look at the overall sufficiency of the evidence, otherwise the appellate court would just simply affirm any jury verdict. So they did what this court did in O'Leary and in Smith and reviewed all the evidence and found that the evidence as a whole was insufficient to sustain the verdict. We would submit that the appellate court was correct in that conclusion, that the evidence was insufficient in this case, and therefore the court doesn't need to reach some of those other issues about the standard of review because this is more of an issue for whether the application of the standard of review was correctly applied by the appellate court. Sir, counsel for the city has argued that, at minimum, the evidence showed that the respondents understood this order to be in order to vacate the mezzanine and that there was evidence that, in fact, the mezzanine was being used. The argument is, could not a rational trial of fact determine, therefore, that the respondents willfully violated the order as they understood it? Why is that not correct? Well, there's two issues with that. The first issue is that that permits an ambiguous order to be prosecuted and contempt to be found on an ambiguous order. So we're suggesting that one of the ambiguities in the order, if we can read one of the ambiguities as finding a violation, therefore we'll convict. And that is not the authority and that's not the weight of authority nationwide on the issue. If there is an ambiguity, we're not going to track it down and figure out if one interpretation of that may have been violated and find contempt. The second issue would be that involves a jury instruction which was objected to and there was an issue in the appellate court which they didn't reach, but there was a jury instruction on whether or not, about knowledge of the respondents as to that particular evidence. So there was an issue as to whether the respondents were aware, after taking steps to try and close that area, that it was being used anyway. And there was an instruction that was objected to, a corporate instruction, that the respondents could be found to have violated the order based on the acts of agents of the corporation. And that was objected to and that was a very large issue, both in the trial court and in the appellate court, as to being able to make that finding on that issue. So even if that issue were to be considered and you found that one interpretation could find a violation, there's a secondary issue of the jury instruction with that. We'd ask that you affirm the appellate court in this manner. And thank you. Thank you. Good morning. Vicki Rogers on behalf of Calvin Hollins from the Law Office of the Cook County Public Defender. To avoid repetition, we adopt the position of Mr. Kyle's regarding the standard of view. I would like to focus on the fact that the appellate court did correctly apply the standard of review and determined that no rational trier of fact, as a matter of law, could find beyond a reasonable doubt that the order was clear. The order was ambiguous here. The appellate court correctly found that the first element that an order must be clear, be proven beyond a reasonable doubt, was not established at the trial level. The court order was ambiguous because it was unclear if they were not to occupy the second floor of the building or the second mezzanine level of the club. The building at 2347 South Michigan was leased by La Mirage. It had a restaurant on the first floor and a nightclub on the second floor with two levels, a mezzanine level, which had VIP boxes. Sometime in April 2002 is when the city inspected the building and said, oh, there's something wrong with these skyboxes. They're supported by the roof. We think there's a problem. A complaint is filed. In July, La Mirage, being the leases of the building, they go in and they represent the building. The lawyer who's there at that time speaks to the city lawyer and says, okay, what do you want? Let's determine that the VIP area is a problem here. So there's an oil agreement before the court, the case is called, to not occupy the VIP rooms. Then on the record at the hearing, the city attorney again says, the agreement is not to occupy the VIP room. The trial judge affirmed that this is what we're agreeing here at the end of the hearing. But lo and behold, when the clerk writes the order, it says not to occupy the second floor. The city never said this was a problem until after the tragic accident, the second floor. In 2003. We have four more court dates. The attorney who represents the club came back and wrote a memorandum to the regular club attorney saying, okay, you can't occupy the VIP rooms. They're now very important vacant rooms. The regular club attorney gets the letter, gets the order that says only to not occupy the second floor, and then he's like, huh? So he goes and looks at the half sheet, which says not occupy the VIP rooms. So based on that, he tells his clients, you can't occupy the VIP room. So right here we have a problem. We have an inconsistency. We have two interpretations of what second floor means. May I say this question? It has been argued that at that point, after the order that said mandatory order not to occupy second floor, and then confusion that arose later in the minds of the lawyer, that there was some obligation then on the respondents to ask for clarification. We see, for example, in the O'Leary case that's been cited here, that in fact that's what happened. The respondents there were confused by the order they said, and so they asked the court for clarification. Was there any obligation on the part of the respondents here to seek clarification from the court? I don't believe there was an obligation. I think he did what was necessary. He went and looked at the half sheet, which when he saw order not to occupy the second floor, he went and looked at the half sheet. And then there were other court dates in August, September, and October. And each time at those court dates they said, the city attorney said, you are not to, with the orders for not to occupy the second floor VIP rooms. The testimony from the inspectors was the danger and probability of the second floor VIP rooms. The napkin that was placed was placed on the second floor VIP rooms. There was never any issue on any of the court dates and any discussion by anyone at the trial regarding anyone saying in 2002 at any of those hearings that the club was to be closed. Everyone knew the club was open.  They got a license in November to have late hours and to have liquor. The city knew the club was open. The building inspectors knew the club was open. Everyone knew the club was open. So if you know your club is open and the court knows your club is open, then you believe that you can occupy that club. You are not to occupy the VIP rooms. But we do have two interpretations. We're on the record that the court knew that the club was open. When the court orally, the discussions that were had and the trial testimony from everyone that testified at the hearing, they stated nothing about closing the club. It was all about closing the VIP room. So by only talking about closing the VIP rooms, it was understood the club was open. No one said the club had to be closed. There was never a statement of anyone saying that at any of the hearings. Would we be doing any damage to our jurisprudence if we say that a court order doesn't mean what it says on its face? We have to look at what happened prior to it? Is not the court order the final say and that's what is trying to be enforced here? Not when the court order is not clear. There's a constitutional right, a due process right to have an order that is clear, concise. What is not clear about the second floor of 2347 or whatever the address was is closed on its face. What's unclear about that? On its face, it is not clear. There's not an issue of what that means. But when you put it with the oil agreement, that's what we need to look at, you're saying. We don't look at the court order. We look at everything that came up to it to determine whether the court order is clear. Correct, the entire trial was about what that order meant. And then one final question following up on Justice Tice's. In this case, you're saying everyone understood that it was the mezzanine level that was closed. And if there was evidence in the record to show that people were occupying it, is that not sufficient to find indirect? No, Your Honor. The reason being is that that truly supports when you say that the jury, when you tell the jury, we don't care what the order meant. We're saying that second floor, it could be second floor, the building, second floor, the club. That shows there's two interpretations. So when you have two interpretations, the order's not clear. You can't tell the jury to decide a legal question. That is a legal question, and only the trial court or on the reviewing court has to determine that de novo, mixed question of law and fact. First element, you look to see whether or not the order is clear. And if it's not, you don't get to the second portion. You don't get to the jury. Have you answered Justice Carmichael's question? Thank you. Have you?  All right. Thank you, Your Honor. For the reasons stated in the briefs in here today, we request that you affirm the appellate court's finding that the order was ambiguous and that no rational trial fact could find my clients guilty beyond a reasonable doubt. Thank you. Just a few quick points, Your Honor. To begin, the elements of contempt are whether the respondent understood a valid court order such that their conduct was willful. There is no stand-alone question. There is no currently in Illinois law, no stand-alone element of whether the order was clear as a separate matter to an independent observer. The question is whether the order was understood by the particular parties to whom it was addressed. All the evidence, and in order to make that determination, that the jury heard all the evidence that counsel for respondents described. They heard, they had the transcripts in front of them. They had all the evidence from the respondents' attorneys about what they experienced during the court hearings. All that was before the jury to weigh as to whether respondents, in fact, understood what was a very clear, in fact, counsel conceded. On its face, very clear order not to occupy second floor of 2347 South Michigan. Any ambiguity only comes in as a question of fact because of outside, extrinsic evidence. That was all before the jury to weigh. The jury did not believe that respondents truly thought that the order only pertained to the mezzanine or if they did not believe respondents did not understand the court's commands. The issue for this court is who decides this particular issue, and we submit that the correct decision maker is the jury. Respondents wanted the jury to decide their case. They requested the jury, and it's a question of fact. Respondents' counsel has still not identified what possible legal issue is presented by an order that says not to occupy second floor of a building. That's simply not a legal issue. It's only relevant if in the context of whether the respondents understood what they were not to do. Respondents seem to believe that if there's an ambiguity in the language of an order, which in this case there's not, but if there were, that that would entitle them to just get off because the language wasn't clear enough. But the cases that they cite, including O'Leary, are cases in which if there are two possible readings of evidence, and the party to whom the order is directed takes a course of action that doesn't violate one of those, then that particular party's conduct can't be said to have willfully violated the order because it's consistent with a reading of the order. We don't have that in this case. In this case, under both versions of the order, including respondents' own version, they understood that the order was not to occupy the mezzanine at the very least, if nothing else, they admit. So that was clear, and they violated that, too. So under their own reading of the order, they violated the court's order. Counsel, if we agree with your position, do you agree with respondents that this would still have to be remanded to the appellate court for other issues raised by respondents? Yes, Your Honor. We concede that they are entitled to have the appellate court decide the issues they did, in fact, present to the appellate court, because the appellate court did not reach those issues. It decided only on the sufficiency of the evidence. Ms. Leighton, do you also concede that the correct standard is reasonable doubt? It appears from your brief that you do. Well, we would describe the correct standard as whether a rational jury could find beyond a reasonable doubt that there was sufficient evidence to convict respondents. But the first part of what I said was important, because it's not whether the appellate court is convinced beyond a reasonable doubt. That's settled from Jackson on down. It is whether any rational jury could have reached that version. And we submit there is a version of the evidence. And the appellate court's statement of the standard of review indeed said that particular statement, but it was simply lip service to which this court owes no deference in any event. Given the, as an outsider to the case, it's not relevant how an outsider to the case would interpret the order. It's only relevant how these particular respondents understood the order. And if a rational jury could have convicted them based on the evidence presented, which we submit there is ample evidence, then their convictions should be affirmed. How does the whole building code, the understanding that they're, they okayed the, I'll be out with that. The building, there was a building code approval, right, made sometime during the process of this. They never actually received building code approval, because that was what the hearing was being continued for. The first hearing was on the dangerous and conditions found during the inspection. That was continued several more times, while respondents said they were going to get an architect to come in, and they were going to provide the court with satisfactory evidence that there was no danger to the public. That never happened, because the tragedy occurred first.  When I heard Judge Rogers talk a lot about how everybody knew the club was open, how does that enter into the discussion? Your Honor, that is simply not relevant, because there is no evidence, and they cite nothing in the record from which everybody knew the club was open. They, the city did not know the club was open. The city did not know the second floor was being occupied. And the relevant question is whether the respondents violated the court order, not whether they should have been shut down. We should have caught them sooner than they were caught. The court itself had no idea that the second floor was not being occupied. Mr. Kyle stood in open court on October 25, 2002, and the court said, is it agreeable to continue the order not to occupy the second floor, the mezzanine, and the VIP room, and he answered yes. According to the court, the second floor was not being occupied. There was simply, and Respondents Council simply does not cite anything in the record to show that anyone was aware besides respondents that the club was being used. Just quickly, Your Honor asked a question before about whether it would be possible to convict. If the jury thought that the order was so unclear that a reasonable person could not possibly understand it, and also thought that respondents didn't understand it, then it wouldn't be difficult to convict. It would actually be impossible to convict, because the important question for the jury was whether the respondents' violation was willful. But in this case, again, respondents understood that the order prohibited occupying at the very least the mezzanine, and a reasonable jury would understand also, I'm sorry, a reasonable person subject to that order would also understand that the second floor of the 2347 South Michigan meant the second floor of the building. So the jury's finding of a willful violation of a clear order should have been upheld. And unless there are other questions, we would just urge the court to hold that the appellate court may not overturn a jury verdict of indirect criminal contempt unless no rational jury could have reached it. And in this case, there was ample evidence before the jury, and there was ample evidence from which an appellate court could have reached it. And therefore, the jury's verdict should have been upheld. And we respectfully request that the appellate court vacate the appellate court's judgment and reinstate the jury's verdict. If I understood Mr. Carmichael correctly, he said that if the order was ambiguous, even if they understood that the mezzanine was not to be overturned, they should not be found guilty of indirect criminal contempt. We submit that there is no precedent to support that. Their precedent on ambiguous orders only supports that when there's two readings of an order, one of those readings, the party's conduct is consistent and does not violate the order, then that party should not be found in willful violation of the court order because their conduct was okay under one reading of the order. They cite no case, and it should not be as a matter of principle that where the order, even if it were subject to two different readings, which we submit from its plain language it's not, even if this order were subject to two readings, there is no precedent for holding that where a party's conduct violates both versions, they should be able to get off just because the order says could be read in two different ways. In this case, respondents knew that at the very least the order meant don't occupy the mezzanine. They acted to violate that order. Any confusion about the language there may have been, which was before the jury again, any confusion though, should not excuse their noncompliance with that order that they understood. Unless there are further questions, thank you, Your Honor. Thank you. Ms. Layton, Mr. Carmichael, Ms. Rogers, our court thanks you for your arguments presented this morning. Case number 113482, People x Rel, the City of Chicago v. Les Mirage, Inc. is taken under advisement as agenda number nine. You are excused.